[Crim. No. 5908.   In Bank.   Nov. 27, 1956.]

THE PEOPLE, Respondent, v. CHARLES LINSON, Appellant.

Ellery E. Cuff, Public Defender (Los Angeles), under appointment by the Supreme Court, and Richard B. Goethals, Deputy Public Defender, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

CARTER, J.—Defendant Charles Linson appeals, after a trial by jury, from a judgment of conviction of second degree burglary, and from an order denying his motion for a new trial. Defendant's application for augmentation of the record to include the closing argument of the district attorney was granted by this court.

On Saturday, August 20, 1955, at about 5:15 p. m., Mrs. Fuller, an employee of the Volunteers of America, closed and locked the doors of the building housing that establishment which was located at 50th and Central Avenue in the city of Los Angeles. She testified that there was a front door, an inner door leading into a small back room, and a door leading from the back room into a sort of parking lot in the rear. The parking lot was enclosed by a solid metal fence which had a metal gate which opened onto 50th Street. On Monday morning when Mrs. Fuller returned to work she found that the back door, and the door opening into the main shop from the small back room, had been tampered with, and broken into, and that an electric fan, three clocks, a hot plate, a bicycle, and about $40 in money were missing.

A gas station owner whose business was located directly across the street from the Volunteers of America building testified that on Saturday, August 20th, he saw the defendant who was driving a green panel truck in the immediate vicinity of the shop from about 3:30 or 4 p. m. until between 5 and 6 p. m.; that defendant had his truck parked in three different places, but between 5 and 6 p. m. had it parked by the gate of the parking lot in the rear of the Volunteers of America building; that he saw him go in and out of the gate three or four times; that he telephoned the owner of

a beauty shop situated on the same parking lot and told her what he had seen; that he saw the defendant drive his panel truck away. Mrs. Bush, the owner of the beauty shop, testified that after the telephone call, she wrote down the license number of the panel truck; that she saw the defendant come out of the back door of the Volunteers of America building with a fan and a hot plate in his hands; that he took the articles to, and put them, in the truck; that she gave the truck license number to a police officer; that all of this took place sometime between 5 and 6 p. m.; that she had seen the truck and the defendant in the immediate vicinity from around two or three that afternoon until between 5 and 6 p. m.; that she did not see the defendant leave in his truck. A police officer testified that he found defendant by tracing the license number given him by Mrs. Bush; that defendant denied having been in the vicinity of 50th and Central on Saturday, August 20th. A Mr. Gare testified that defendant had been at his used car lot between 4 and 5 p. m., Saturday, August 20th.

On the witness stand defendant testified that he had been at a hardware store at 50th and Central at around 2:30 p. m., Saturday, August 20th; that about 3 p. m. he went home; that he then went to Mr. Gare's used car lot, and from there to his niece's home; that he didn't know the license number of his car; that he did not break and enter the Volunteers of America building and take the missing articles. Defendant admitted five prior felony convictions.

Defendant contends that the evidence is insufficient to sustain the judgment; and that the district attorney committed prejudicial misconduct in his closing argument to the jury.

■ There appears to be no merit to defendant's contention that the evidence is insufficient to sustain the judgment. He was seen, and identified by two witnesses, one of whom saw him coming out of the back door of the Volunteers of America building with two of the missing articles in his hands. Mrs. Fuller testified that she had closed and locked all doors to the building at about 5:15 in the afternoon of Saturday, August 20th; that she had not given defendant permission to enter or to take the articles. From this evidence, the jury could, and did, draw the conclusion that defendant was the one guilty of the theft of the articles.

■ Defendant argues that the district attorney was guilty of using "prejudice" in that he argued defendant's prior

convictions to the jury. He also argues that his race was used against him in that the district attorney "was guilty of misconduct by his remarks to the jury in his closing argument that this was not a case where the *white* man made the identification, but the identification was made by the *Negro*, one of his own kind, this misconduct comes within the rule of *People* v. *Simon*, 80 Cal.App. 675 [252 P. 758]." (Emphasis that of the defendant.) The Simon case is not at all like the one under consideration. There, the defendant, who was of the Jewish race, was charged with wilfully burning insured property with intent to defraud the insurers. The district attorney there argued that "There has, of course, grown up a suspicion in this country with reference to fires, whenever a Jew has anything to do with it. . . ." There were several other references to Jews having burned insured buildings in order to collect the insurance. The portion of the district attorney's argument of which defendant complains reads as follows: "I would also call this to your attention, and maybe this is my own particular brand of mountain folklore, but I am always more convinced if I have persons of a particular race identify their own kind. I don't know whether it is true or not that a member of the negro race is more apt to identify, and with more certainty, a fellow member of his race than not, but here you do have that case where Mr. Holloway identifies a member of his race, and I think the defendant, in good conscience, would admit he has some distinctive features. The other lady identifies him positively." In the case at bar, the jury saw the defendant and the witnesses and if they were of the Negro race that fact must have been obvious without reference thereto. It does not appear, however, how this statement could have prejudiced defendant.

The judgment and order appealed from are affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.